1

2

3

4 UNITED STATES DISTRICT COURT

5 DISTRICT OF NEVADA

6 * * *

7 DEBRA A. SHULTZ,                                    Case No. 2:15-cv-00804-PAL

8                              Plaintiff,

9       v.                                            **ORDER**

10 NANCY A. BERRYHILL, Acting                         (Mot. Reversal/Remand – ECF No. 21)
   Commissioner of Social Security,                   (Cross-Mot. to Affirm – ECF No. 24)

11

12                             Defendant.

13        This matter involves Plaintiff Debra A. Shultz's appeal and request for judicial review of

14 the Acting Commissioner of Social Security, Defendant Nancy A. Berryhill's final decision

15 denying her claims for disability insurance benefits under Title II of the Social Security Act (the

16 "Act"), 42 U.S.C. §§ 401–33, and supplemental security income under Title XVI of the Act, 42

17 U.S.C. §§ 1381–83.[1] This case is referred to the undersigned magistrate judge for a determination

18 and entry of final judgment pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of

19 Civil Procedure. *See* Reference Order (ECF No. 27).

20                                      **BACKGROUND**

21        On September 16, 2011, Ms. Schultz protectively filed applications for a period of

22 disability, disability insurance benefits, and supplemental security income (SSI) benefits, alleging

23 disability beginning on May 20, 2011. AR 153–66.[2] She was 50 years old at the time she applied.

24 _____

25 [1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to the Federal Rules of
   Civil Procedure and the Social Security Act, the court substitutes Nancy A. Berryhill for Carolyn W. Colvin
26 as the defendant. *See* Fed. R. Civ. P. 25(d) (allowing the automatic substitution of a successor to a public
   officer who is a party to an action but ceases to hold office while the action is pending); 42 U.S.C. § 405(g)
27 ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the
   person occupying the office of Commissioner of Social Security or any vacancy in such office.").

28 [2] AR refers to the Administrative Record (ECF No. 16-1), a certified copy of which was delivered to the
   undersigned upon the Commissioner's filing of her Answer.

AR 37. Her work history included a job as a security officer for the Transportation Security Administration and a dispatcher. AR 50, 56–57. In her application, Shultz claimed she was unable to work because of bipolar disorder, fibromyalgia, ulcers, and vertigo. AR 206. The Social Security Administration denied her application initially and on reconsideration. AR 74–77.

An administrative law judge ("ALJ") held a hearing on August 14, 2013, where Shultz appeared with counsel. AR 48–73. In an opening statement, counsel asserted Schultz qualified for disability benefits because: (1) the grid rules directed a disability finding because of Shultz's age; (2) she meets or equals certain listings for mental disorders; and (3) the combination of fibromyalgia, affective disorder, osteoarthritis, vertigo, and ulcers prevented her from substantial gainful employment as it exists in the national economy. AR 49.

In a decision dated December 13, 2013, the ALJ found that Ms. Shultz was not disabled. AR 20–39. Shultz requested review of the ALJ's decision by the Appeals Council, but the decision became final when the Appeals Council denied review on March 19, 2015. AR 1–6. On April 29, 2015, Shultz filed a complaint in federal court, seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). The Commissioner filed her Answer (ECF No. 13) on February 12, 2016. Shultz filed a Motion for Reversal and/or Remand (ECF No. 21), and the Commissioner filed a Cross-Motion to Affirm and Response (ECF Nos. 24, 25).

The court has reviewed the record and considered Ms. Shultz's Motion and the Commissioner's Cross-Motion and Response. Shultz did not file a reply and the deadline to do so has expired. For the reasons explained, the court denies Shultz's Motion and grants the Commissioner's Cross-Motion.

## DISCUSSION

### I. APPLICABLE LAW

#### A. Judicial Review of Disability Determinations

Federal district courts review administrative decisions in social security benefits cases under 42 U.S.C. § 405(g). However, judicial "review of social security determinations is limited." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). After an ALJ has held a hearing and the decision is final, § 405(g) allows a disability claimant to seek judicial review

of an adverse decision by filing a lawsuit in a federal district court within the district where the claimant lives.  The statute authorizes the court to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).

The ALJ's findings of fact are conclusive if they are supported by "substantial evidence." 42 U.S.C. § 405(g).  The court may reverse the decision "only if the ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard."  *Shaibi v. Berryhill*, 883 F.3d 1102, 1106 (9th Cir. 2017).  "Substantial evidence means more than a mere scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017).  To determine whether the findings are supported by substantial evidence, a court "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence."  *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014).

"For highly fact-intensive individualized determinations like a claimant's entitlement to disability benefits, Congress 'places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency'."  *Treichler*, 775 F.3d at 1098 (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 621 (1966)).  Thus, courts must "leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record."  *Id.* (citing 42 U.S.C. § 405(g); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).  The Commissioner's findings must be upheld if they are supported by inferences reasonably drawn from the record. *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2003).  "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Trevizo*, 871 F.3d at 674–75 (quoting *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007)).

The court may only review the reasons the ALJ provided in the disability decision and "may not affirm the ALJ on a ground upon which he did not rely."  *Id.* at 675 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014)).  Thus, an ALJ's findings should be stated with enough specificity so that a court does not speculate as to the basis of the findings when

determining if the findings are supported by substantial evidence. *See Burrell v. Colvin*, 775 F.3d 1133, 1140–41 (9th Cir. 2014). Cursory findings of fact lacking explicit statements about what portions of evidence were accepted or rejected are not sufficient. *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981). An ALJ's findings should be comprehensive, analytical, and include a statement explaining the "factual foundations on which the ultimate factual conclusions are based." *Id.*; *see also Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) (an ALJ need not "discuss every piece of evidence" but must explain why significant or probative evidence was rejected).

### B. Disability Evaluation Process

A five-step sequential evaluation process is used "to determine whether a claimant is disabled and eligible for benefits." *Shaibi*, 883 F.3d at 1106 (citing 20 C.F.R. § 404.1520(a)). "'The claimant carries the initial burden of proving a disability in steps one through four'." *Id.* (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). If the claimant establishes an inability to continue his or her past work with specific medical evidence, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work. *Shaibi*, 883 F.3d at 1106.

## II. THE ALJ'S DECISION

An ALJ is required to follow the five-step process to determine whether a claimant is disabled. 20 C.F.R. § 416.920. If an ALJ makes a finding of disability or non-disability at any step, no further evaluation is required. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

Here, the ALJ followed the five-step sequential evaluation process and issued an unfavorable decision (the "Decision"). AR 20–39.

### A. Step One

The first step of the disability evaluation requires an ALJ to determine whether the claimant is currently engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(b),

416.920(b).  SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities, usually for pay or profit.  20 C.F.R. §§ 404.1572(a)–(b), 416.972(a)–(b).  If the claimant is currently engaging in SGA, then a finding of not disabled is made.  If the claimant is not engaging in SGA, then the analysis proceeds to the second step.

At step one, the ALJ found that Ms. Shultz had not engaged in SGA since May 20, 2011, the alleged onset date.  AR 25.  Given her lack of SGA, the analysis proceeded to step two.

## B.  Step Two

The second step of the disability evaluation addresses whether a claimant has a medically-determinable impairment that is severe or a combination of impairments that significantly limits him or her from performing basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the claimant's ability to work.  20 C.F.R. §§ 404.1521, 416.921; Social Security Ruling ("SSR") 85-28, 1985 WL 56856 (Jan. 1, 1985), SSR 96-3p, 61 Fed. Reg. 34468 (July 2, 1996); SSR 96-4p, 61 Fed. Reg. 34488 (July 2, 1996).[3]  If a claimant does not have a severe medically-determinable impairment or combination of impairments, then an ALJ will make a finding that a claimant is not disabled.  If claimant has a severe medically-determinable impairment or combination of impairments, then an ALJ's analysis proceeds to the third step.

At step two in the Decision, the ALJ found that Ms. Shultz had the following severe impairments: (i) bipolar disorder, and (ii) history of alcohol abuse and dependence.  Because she had multiple severe medically-determinable impairments, the ALJ proceeded to the third step.[4]

---

[3]  SSRs are the Social Security Administration's official interpretations of the Act and its regulations.  *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009); 20 C.F.R. § 402.35(b)(1).  "SSRs do not carry the 'force of law,' but they are binding on ALJs nonetheless."  *Bray*, 554 F.3d at 1224.  SSRs are entitled to some deference as long as they are consistent with the Act and related regulations.  *Id*. at 1223.

[4]  Although Ms. Shultz testified that she suffered from fibromyalgia, muscle pain, and vertigo, her report was not supported by medical diagnoses, laboratory findings or explanation.  AR 25–26.  She further testified that she'd had left shoulder surgery.  AR 26.  However, there were no medical records to support this allegedly disabling impairment.  *Id*.  The ALJ therefore concluded there was insufficient evidence to find these were severe impairments.  *Id*.  In addition, the ALJ noted that he considered the regulation related to obesity.  AR 26 (citing SSR 02-1p, 67 Fed. Reg. 57859 (Sept. 12, 2002)).  Ms. Shultz testified that she weighed 170 pounds and was 5 foot 2 inches tall, giving her a Body Mass Index (BMI) of 31.1%.  *Id*.  The ALJ found this impairment did not cause any significant limitations in her ability to perform "basic" work

5

**C. Step Three**

Step three of the disability evaluation requires an ALJ to determine whether a claimant's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, which is commonly referred to as the "Listings." 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.826. If a claimant's impairment or combination of impairments meet or equal the criteria of the Listings and meet the duration requirement, 20 C.F.R. §§ 404.1509, 416.909, then an ALJ makes a finding of disability. 20 C.F.R. §§ 404.1520(h), 416.920(h). If a claimant's impairment or combination of impairments does not meet or equal the criteria of the Listings or meet the duration requirement, then the analysis proceeds to the next step.

When the Agency evaluates the severity of mental impairments, 20 C.F.R. § 404.1520a requires the use of a "special technique" to evaluate four broad functional areas known as the "Paragraph B Criteria" in Listing 12.00C of the Listing of Impairments set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1. *Id*.; 20 C.F.R. § 1520a (explaining the psychiatric review technique); SSR 96-8p, 61 Fed. Reg. 34474 (July 2, 1996) (application of the technique is documented on a Psychiatric Review Technique Form). Paragraph B criteria require a claimant to show that he or she experienced marked limitations in mental function. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00. To satisfy Paragraph B criteria, mental impairments must result in at least two of the following: (i) marked restriction in activities of daily living; (ii) marked difficulties in maintaining social functioning; (iii) marked difficulties in maintaining concentration, persistence, or pace; or (iv) repeated episodes of decompensation, each of extended duration. *See, e.g.*, *id*. § 12.04(B). A "marked" limitation means "more than moderate but less than extreme." *Id*. § 12.00(C). Repeated episodes of decompensation with extended duration means three episodes within one year, or an average of once every four months, each lasting for at least two weeks. *Id*. § 12.00(C)(4).

If the Paragraph B criteria are not met, a claimant may nevertheless be found disabled under alternative Paragraph C criteria. *Id*. § 12.00(A). Under the regulations, Paragraph C criteria are

---

activity and was not severe under 20 C.F.R. § 404.1521. *Id*. Thus, the ALJ determined that obesity was also a non-severe impairment. *Id*. Schultz does not challenge these findings on judicial review.

considered only if the Paragraph B criteria are not satisfied. *Id*. Paragraph C criteria require a medically documented history of a chronic affective disorder of at least two years duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following: (1) repeated episodes of decompensation each of extended duration; or (2) a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or (3) current history of one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such arrangement. *See* §§ 12.02(C), 12.03(C), 12.04(C), 12.05(C), 12.06(C).

At step three, the ALJ determined that the evidence did not support a finding that Ms. Shultz had the severity of symptoms required, either singly or in combination, to meet or equal Listings 12.04 (affective disorders) or 12.09 (substance addiction disorders). AR 26. The ALJ specifically evaluated the Paragraph B Criteria for Listings 12.04 and 12.09 and concluded that the greater weight of the evidence showed that Shultz suffered: (i) mild restrictions in activities of daily living; (ii) mild to moderate difficulties in social functioning; (iii) moderate limitations in concentration, persistence, or pace; and (iv) no episodes of decompensation that have been of extended duration. AR 26–27; *see also* AR 422–35 (Psychiatric Review Technique Form). The ALJ also considered Paragraph C criteria; however, the record lacked evidence of Paragraph C criteria. AR 27. The ALJ therefore concluded that she did not have an impairment or combination of impairments that meet or medically equal one of the impairments described in the Listings. *Id*. Schultz does not claim she has an impairment or combination of impairments that meet or equal the Listings on judicial review of the ALJ's Decision.

### D. Step Four – RFC

The fourth step requires an ALJ to determine whether a claimant has the residual functional capacity ("RFC") to perform his or her past relevant work ("PRW"). 20 C.F.R. §§ 404.1520(f), 416.920(f). To answer this question, an ALJ must first determine a claimant's RFC. 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is a function-by-function assessment of a claimant's ability to

7

do physical and mental work-related activities on a sustained basis despite limitations from impairments. SSR 96-8p, 61 Fed. Reg. 34474 (July 2, 1996). In making this finding, an ALJ must consider all the relevant evidence such as symptoms and the extent to which they can be reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529, 416.929; SSR 96-4p, 61 Fed. Reg. 34488 (July 2, 1996); SSR 96-7p, 61 Fed. Reg. 34483 (July 2, 1996). To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, an ALJ must make a finding on the credibility of a claimant's statements based on a consideration of the entire case record. An ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927 as well as SSR 96-2p, 61 Fed. Reg. 34489 (July 2, 1996); SSR 96-5p, 61 Fed. Reg. 34471 (July 2, 1996); and SSR 06-3p, 71 Fed. Reg. 45593 (Aug. 9, 2006).

After considering the entire record, the ALJ concluded that Ms. Shultz had the RFC to "perform a full range of work at all exertional levels but with the following non-exertional limitations: she is limited to performing no more than simple work tasks and following simple work instructions." AR 28. In making this finding, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and the other evidence." *Id*. He also considered opinion evidence. *Id*. Although the ALJ found that Shultz's medically determinable impairments could reasonably be expected to cause her alleged symptoms, he determined that her statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely credible. AR 29. Ms. Shultz does experience some levels of mental limitations, but the ALJ found that her treatment notes in the record do not sustain her allegations of disability, and that his RFC assessment is supported by the objective medical evidence in the record. AR 36.

### E. Step Four – Ability to Perform PRW

Once an ALJ has determined a claimant's RFC as an initial consideration at step four, an ALJ utilizes the RFC assessment to determine whether a claimant can perform his or her PRW. 20 C.F.R. §§ 404.1520(f), 416.920(f). PRW means work a claimant performed within the last 15

8

years, either as the claimant actually performed it or as it is generally performed in the national economy. 20 C.F.R. § 404.1560(b). In addition, the work must have lasted long enough for a claimant to learn the job and to perform it as SGA. 20 C.F.R. §§ 404.1560(b), 404.1565, 419.960(b), 416.965. If a claimant has the RFC to perform his or her past work, then an ALJ makes a finding that a claimant is not disabled.

The Department of Labor publishes the Dictionary of Occupational Titles (DOT), which provides "detailed physical requirements for a variety of jobs." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1230 n.3 (9th Cir. 2009) (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1153 n.8 (9th Cir. 2007)). The ALJ and/or a vocational expert utilizes the DOT in determining whether a claimant with her RFC, can perform her PRW. *Id.* (citing 20 C.F.R. § 404.1560(b)(2)).

At step four in the Decision, the ALJ concluded that Ms. Shultz was unable to perform her PRW as a security officer (DOT # 376.367-018) and dispatcher (DOT # 913.367-010). AR 37. The vocational expert testified that a hypothetical individual with Ms. Shultz's RFC would not be able to complete the demands of her PRW. AR 67–68. Accordingly, the ALJ accepted this testimony and determined she was unable to perform her PRW. AR 37. As a result, the ALJ continued to step five.

**F. Step Five**

Step five requires an ALJ to determine whether a claimant can perform any other work considering his or her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g). If he or she can do other work, then an ALJ makes a finding that claimant is not disabled. Although a claimant generally continues to have the burden of proving disability at this step, the Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do. *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012) (citing 42 U.S.C. § 423(d)(2)(A)).

The Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, are commonly known as the "Grids," and specific sections are referred to as a Medical-Vocational rule. The Grids aid the ALJ in the analysis at step five for cases that cannot be evaluated on medical considerations alone. The Grids consist of three tables that each represent a different

physical exertional level: sedentary, light, and medium work. *Id*. Each table also presents the vocational factors Congress has identified as important: age, education, and work experience. If a claimant can perform all or substantially all of the exertional demands at a given exertional level, the Grids direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile. SSR 83-11, 1983 WL 31252 (Jan. 1, 1983). When a claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has non-exertional limitations, the Grids are used as a framework for decision-making, unless there is a particular rule that directs a conclusion of "disabled" without considering the additional exertional and/or non-exertional limitations. *See* SSR 83-12, 1983 WL 31253 (Jan. 1, 1983); SSR 83-14, 1983 WL 31254 (Jan. 1, 1983). If the claimant has solely non-exertional limitations, Medical-Vocational Rule 204.00 provides a framework for decision-making. SSR 85-15, 1985 WL 56857 (Jan. 1, 1983).

At step five in the Decision, the ALJ determined that Ms. Shultz could perform jobs that exist in significant numbers in the national economy, considering her age, education, work experience, and RFC, using the Grids as a framework for his decision. AR 37–38. On the alleged date of disability onset, Shultz was 50 years old, which categorized her as an individual closely approaching advanced age. AR 37. She has at least a high school education and is able to communicate in English. *Id*. The ALJ found that transferability of her job skills was not material to the determination of disability, because using the Grids as a framework supported a finding that she was not disabled, without regard to whether she had transferable job skills. *Id*.

The ALJ found that Ms. Shultz's ability to perform work at all exertional levels has been compromised by non-exertional limitations. AR 38. To determine the extent to which her non-exertional limitations eroded the occupational base of unskilled work at all exertional levels, the ALJ asked the vocational expert, Bernard Preston, a hypothetical question regarding whether jobs exist in the national economy for an individual with Shultz's age, education, work experience, and RFC. AR 38, 64–73. Mr. Preston testified that the individual would be able to perform the requirements of three representative jobs:

///

| Job Title | DOT Code | Exertional Level | Skill Level | Approximate Number of Jobs Existing |
|-----------|----------|------------------|-------------|-------------------------------------|
| Ticket Taker | 344.667-010 | Light | Unskilled | 86,527 nationally |
| Office Helper | 239.567-010 | Light | Unskilled | 117,183 nationally |
| Mail Clerk | 209.687-026 | Light | Unskilled | 71,760 nationally |

AR 38.

Ms. Shultz's counsel asked Mr. Preston whether a hypothetical individual with "a moderate restriction in maintaining attention, concentration and pace for extended periods" would be able to do these jobs. AR 38, 70–73. Preston responded that based on his interpretation of what "moderately is defined…it would eliminate those jobs, sir." AR 71. The Decision quotes SSR 86-8, 1986 WL 68636 (Jan. 1, 1986), which states that the "claimant's functional capacity must be defined in terms of the claimant's ability to function in a work setting." Because Shultz's counsel did not specify the functional limitations that would result from the "moderate" limitations he posed in his hypothetical question, the ALJ did not give significant weight to this testimony. AR 38.

The ALJ found that Mr. Preston's testimony in response to the ALJ's initial hypothetical was consistent with the DOT and the jobs Preston identified represented significant numbers. *Id.* Considering Shultz's age, education, work experience, and RFC, the ALJ determined she was capable of making a successful adjustment to other jobs that exist in significant numbers in the national economy. *Id.* A finding of "not disabled" was, thus, appropriate under the framework of section 204.00 of the Medical-Vocational Guidelines. *Id.*

### III. THE PARTIES' POSITIONS

Ms. Shultz seeks reversal and remand of the ALJ's decision on the grounds the ALJ failed to properly consider the medical evidence from Dr. Voss and the testimony of Mr. Preston. Pl.'s Mot. (ECF No. 21). Shultz points out that Dr. Voss found she was moderately limited in multiple areas.[5] Schultz claims that when her counsel asked Mr. Preston to assume the moderate limitations

---

[5] Dr. Voss found moderate limitations in her abilities to (i) understand, remember, and carryout detailed instructions; (ii) maintain attention and concentration for extended periods; (iii) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and (iv) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform

described by Dr. Voss, the vocational expert testified that such a person would have no work available to them, citing AR 71.

Ms. Shultz contends that the ALJ erred in his assessment of Dr. Voss' opinion. Although the ALJ claimed to give Dr. Voss' opinion great weight, Shultz argues the ALJ ignored the doctor's findings of moderate limitations when the ALJ made his RFC assessment. The ALJ's RFC assessment incorporated Dr. Voss' limitation to simple work tasks and simple work instructions, and the ALJ included these limitations in his hypothetical to the vocational expert, but excluded Dr. Voss' moderate limitations without explanation, which was legal error. By rejecting Mr. Preston's testimony that included Shultz's moderate limitations, she asserts that the ALJ simply substituted his own lay opinion for that of the expert.

The Motion anticipated the Commissioner would cite *Stubbs-Danielson v. Astrue*, 539 F.3d 1169 (9th Cir. 2008), and argues that reliance on this case is misplaced. There, the Ninth Circuit held that an "assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with the restrictions identified in the medical testimony." *Id.* at 1174. Shultz argues that the medical testimony in *Stubbs-Danielson* "did not establish any limitations in concentration, persistence, or pace." Mot. at 13. In contrast, the medical evidence in this case establishes that Schultz has multiple moderate limitations in concentration, persistence, or pace. Shultz therefore urges the court to find *Stubbs-Danielson* inapposite.

The Commissioner seeks affirmance of the ALJ's Decision asserting the ALJ properly assessed Dr. Voss's opinion, Shultz's RFC, and Mr. Preston's testimony in determining that Shultz is not disabled. Cross-Mot. & Resp. (ECF Nos. 24, 25). The Commissioner argues that the ALJ's RFC assessment properly accounted for Shultz's limitations as stated in Dr. Voss' mental RFC assessment. Ms. Shultz retained the RFC to work at all levels of exertion; however, based on Dr. Voss' opinion, the ALJ found Shultz was limited to simple work and following simple tasks.

at a consistent pace without an unreasonable number and length of rest periods. AR 436–37. Each of these areas was evaluated "within the context of the individual's capacity to sustain that activity over a normal workday and workweek, on an ongoing basis." AR 436.

AR 28, 34–35. Shultz claims this RFC should have included moderate limitations in maintaining concentration, persistence, or pace for extended periods, as well as maintaining attendance, but these limitations are not the same as RFC. The Commissioner points out that Shultz's RFC is the most she can do despite her impairments and resulting limitations. Cross-Mot. & Resp. at 5 (citing 20 C.F.R. § 404.1545).[6] The plain language of the regulations contradicts her contention.

The Cross-Motion argues the special technique for evaluating mental impairments requires the ALJ to determine what limitations a claimant has in the functional domains of activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace. The Commissioner notes that regulations and case law provide guidance on this issue and establish that "a moderate limitation is not part of the RFC, but merely informs the RFC finding." *Id.* (collecting cases and quoting SSR 96-8p).[7] Dr. Voss' findings of moderate limitations informed his conclusion as to what Shultz could do despite her limitations. *Id.* (citing AR 432 (III. Rating of Functional Limitations, A. "B" Criteria of the Listings)). Dr Voss' mental RFC assessment concluded that Ms. Shultz "can maintain the attention, concentration, and persistence necessary to carry out simple work tasks at a consistent pace over a regular 40 hr workweek." AR 438.

The Commissioner asserts that the ALJ properly rejected the portions of Mr. Preston's testimony that eliminated substantial gainful employment for Ms. Shultz based on her counsel's unspecified, moderate functional limitations. Shultz's counsel asked Mr. Preston to explain the meaning of a moderate limitation in attention, concentration, and persistence. But Preston did not need to provide an explanation since Dr. Voss did so. The Commissioner asserts that the ALJ reasonably relied on Dr. Voss' explanation of his mental residual functional capacity findings.

The Commissioner also argues the Motion misstates the facts and applicability of *Stubbs-Danielson*. There, the medical record did, in fact, show a limitation in the claimant's pace, which one doctor opined restricted her to "simple tasks." 539 F.3d at 1173. Here, Dr. Voss found

---

[6] "Your residual functional capacity is the most you can still do despite your limitations." 20 C.F.R. § 404.1545(a)(1).

[7] SSR 96-8p, 61 Fed. Reg. 34474 (July 2, 1996) (limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace "are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process").

limitations in Ms. Shultz's concentration, persistence, or pace, and then found those limitations restricted her to simple tasks at a consistent pace over a normal workweek. Thus, the Ninth Circuit's holding in *Stubbs-Danielson* supports the ALJ's findings that the Commissioner's decision should be affirmed.

**IV.    ANALYSIS AND DECISION**

The court has reviewed the record in its entirety and weighed both the evidence that supports and the evidence that detracts from the ALJ's conclusion and finds the ALJ's decision is supported by substantial evidence, and the ALJ did not commit legal error.

As an initial matter, the Motion erroneously claims that the ALJ determined Schultz could perform her PRW. Mot. (ECF No. 21) at 5. The ALJ found that Schultz had the RFC to perform a full range of work at all exertional levels; however, because of her non-exertional limitations she was limited to performing no more than simple work tasks and following simple work instructions. AR 28. He relied on the testimony of the vocational expert and found that Schultz could not perform her PRW as a security officer and dispatcher. AR 37.

On judicial review, Schutz claims the ALJ committed reversible error by failing to properly consider the medical opinion of the state agency physician, David Voss, PhD, and the testimony of the vocational expert. She does not challenge the ALJ's findings regarding her treating physicians, the examining physicians, the weight afforded to the opinions of physicians other than Dr. Voss, or his adverse credibility finding. Accordingly, this order addresses only Dr. Voss' opinion regarding Shultz's non-exertional mental impairments and the portion of the Decision discussing his opinion.

Dr. Voss completed a Psychiatric Review Technique Form for Ms. Shultz on April 17, 2012. AR 422–35. Dr. Voss reviewed the medical evidence of record, including treating and consultative sources. AR 434. The doctor noted that Shultz had been seen by a psychiatrist, Eden Santiago-Lee, M.D., from July 2007 to August 2011 and was diagnosed with bipolar disorder. AR 434 (citing AR 311–22). Dr. Voss also noted that a disability determination services physician, Rochelle Hawkins, M.D., completed an internal medicine consultative examination on Shultz on March 23, 2012, diagnosing Shultz with bipolar disorder and depression. AR 434 (citing

AR 411–21).   The Psychiatric Review Technique Form further addressed Ms. Shultz's credibility issues.   AR 434.   Dr. Voss found that Shultz's "impairments could reasonably be expected to produce the alleged symptoms, but their intensity and the effect on functioning are not consistent with the total file of evidence."   *Id.*   The doctor opined that her statements were only "partially credible." He found Shultz had the following functional limitations: (i) mild limitation in activities of daily living; (ii) moderate difficulties in social functioning; (iii) moderate limitation in maintaining concentration, persistence, or pace; and (iv) no episodes of decompensation.   AR 432. Dr. Voss assessed her functional limitations finding her "mental impairments do not interfere with ADLs, social interactions and/or cognitive capacities to such an extent that claimant meets or equals a listing." Id.  He opined a mental residual functional capacity assessment was needed to assess her residual functional capacity. AR 434.

Dr. Voss also completed a Mental Residual Functional Capacity Assessment, ("MRFC"), on April 17, 2012.  AR 436–39.  Dr. Voss determined Ms. Shultz was not significantly limited in the ability to remember work locations and procedures or to understand and remember very short and simple instructions.  AR 436.  These abilities would allow her to complete "multi-step tasks." AR 438.  In the areas of sustained concentration and persistence, he found she was not significantly limited in the ability to sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being distracted by them and make simple work-related decisions.   AR 436.   She was moderately limited in her ability to carry out detailed instructions, maintain attention and concentration over extended periods and perform activities with a schedule, maintain regular attendance and be punctual with customary tolerances. *Id.*  He found she was also moderately limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. AR 437. Dr. Voss found that Shultz was not significantly limited in the areas of social interaction and adaptation.  *Id.*

Dr. Voss' functional capacity assessment was based on the medical evidence of record. AR 438. Although Schultz had the limitations noted in his MRFC Dr. Voss concluded her prior history and medical evidence "does not indicate the presence of functional limitations severe enough to

15

prevent employment in all work environments." *Id.* He opined she could "maintain the attention, concentration and persistence necessary to carry out simple work tasks at a consistent pace over a regular 40 hr workweek, within [her] physical limitations." AR 438. Based on Ms. Shultz's medically determinable impairments and mental RFC assessment, Dr. Voss determined she was "capable of unskilled work." AR 438. The ALJ gave Dr. Voss' opinion significant weight because he found it was supported by the medical record and consistent with Shultz's testimony during the administrative hearing that she was actively looking for work. AR 35.

Here, the Decision demonstrates that the ALJ thoroughly considered the treatment records, opinions, consultative examinations, and findings of Drs. Puszkarski, Zamirowski, Santiago-Lee, Gotanco, Hawkins, Mack, Cremerius, and Voss. AR 26–38. Dr. Voss opined that Ms. Shultz was moderately limited in certain areas. AR 436–37. However, the doctor also opined that she had the ability to understand and remember very short and simple instructions, which would allow her to complete "multi-step tasks." AR 436, 438. According to Dr. Voss, the medical evidence indicated she could "maintain the attention, concentration and persistence necessary to carry out simple work tasks at a consistent pace over a regular 40 hr workweek, within [her] physical limitations." AR 438. Thus, she was "capable of unskilled work." *Id.* The ALJ expressly relied on Dr. Voss' opinion to formulate Shultz's RFC and the hypothetical he posed to Mr. Preston. AR 71. The ALJ found that Shultz had the RFC to "perform a full range of work at all exertional levels but … she is limited to performing no more than simple work tasks and following simple work instructions." AR 28.

Schultz does not explicitly challenge the ALJ's residual functional capacity assessment at step three of the sequential evaluation process. Rather, she argues the ALJ erred at step five by not properly considering the opinion of Dr. Voss that she was moderately limited in certain areas, and by not incorporating those moderate limitations in the hypothetical the ALJ posed to the vocational expert. Schultz also maintains that the hypothetical posed by her counsel incorporated those moderate limitations, and that the ALJ erred by failing to properly consider the expert's response to counsel's hypothetical. The court finds the ALJ's residual functional capacity assessment properly accounted for the moderate functional limitations Dr. Voss found. The ALJ's RFC

accounted for Shultz's difficulties in maintaining concentration, persistence and pace.  The court also finds the ALJ did not err in failing to give significant weight to the testimony of the vocational expert which responded to counsel's hypothetical which was based on a faulty premise.  As the ALJ pointed out at the hearing the opinion Dr. Voss reached in his psychiatric review technique is not a residual functional capacity assessment.  The ALJ's RFC considered and relied on Dr. Voss' opinions in finding Schultz had the RFC to perform work at all exertional levels with the non-exertional limitations to performing no more than simple work tasks and following simple instructions.

The ALJ assesses a claimant's RFC based on all the relevant evidence in the record.  *Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017) (quoting 20 C.F.R. § 416.945(a)(1)).  The "ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony."  *Stubbs-Danielson*, 539 F.3d at 1174.  "[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC."  *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) (citing *Stubbs-Danielson*, 539 F.3d at 1174).

Schultz concedes that a finding of moderate non-exertional limitations does not impose limitations that satisfy the step three analysis.  However, she argues that a moderate impairment "does impose significantly severe limitations that may impact on the ability to perform 'substantial' gainful activity at steps four and five of the sequential disability analysis, as opposed to step three's more stringent demand that no gainful work actually be performed."  Motion (ECF No. 21) 7:19-24.  Schultz claims that the vocational expert provided a definition of the word "moderate" and testified that moderate limitations would eliminate all work activity, citing AR 71.  She contends the ALJ committed reversible error in rejecting the vocational expert's testimony in this regard, and merely substituted his own lay opinion for the opinion of the vocational expert.  She maintains the ALJ's hypothetical incorporated the limitations of simple work tasks and simple work instructions into the RFC assessment, but failed to incorporate the moderate limitations described by Dr. Voss.  The court disagrees.

Citing an unpublished Ninth Circuit decision of *Brink v. Comm.'r Soc. Sec. Adm.*, 348 F. Appx. 211, 212 (9th Cir. 2009), she argues that "a limitation to simple, repetitive work by itself does not adequately encompass difficulties with concentration, persistence, or pace." Motion (ECF No. 21), 10:22 – 11:8. Unpublished dispositions or orders of the Ninth Circuit may not be cited as precedent, except when relevant under the doctrine of law of the case or rules of claim preclusion or issue preclusion. *See* Ninth Circuit Rule 36-3(a); *Hart v. Massanari*, 266 F.3d 1155, 1180 (9th Cir. 2001). However, unpublished dispositions and orders issued from 2007 forward may be cited as persuasive authority. *Animal Legal Def. Fund v. Veneman*, 490 F.3d 725, 733 (9th Cir. 2007) (citing Ninth Circuit Rule 36-3(b)); Fed. R. App. P. 32.1(a). The court agrees with the Commissioner that the *Brink* decision misread the Ninth Circuit's holding in *Stubbs-Danielson*. More importantly the court finds *Stubbs-Danielson* is controlling authority supporting the Commissioner's position.

Schultz contends the Ninth Circuit's holding in *Stubbs-Danielson v. Astrue*, 539 F.3d 116 (9th Cir. 2008) is inapposite because the medical testimony in that case did not establish any limitation in concentration or pace. Here, however, Dr. Voss opined that Schultz does have difficulty with concentration, persistence, and pace. Again, the court disagrees.

In *Stubbs-Danielson*, the Ninth Circuit addressed a claimant's denial of disability benefits in the context of claimed mental and physical limitations. Evaluations were conducted by two physicians and one psychologist. Dr. McCollum evaluated Stubbs-Danielson and diagnosed her with borderline intellectual functioning and said she showed good persistence, but slow pace in thought and action. *Id.* at 1171. Dr. McCollum found Stubbs-Danielson could follow three-step instructions. Dr. McCollum made other findings with respect to her intellectual functioning, verbal comprehension, perceptional organization, abstract thinking and the like. Dr. McCollum also did a Mental Residual Functional Capacity assessment which found Stubbs-Danielson moderately limited in several other functioning areas. Id at 1173. He did not, however, assess whether Stubbs-Daniels could perform unskilled work on a sustained basis. *Id.*

Dr. Eather, a state agency reviewing psychologist, assessed whether Stubbs-Danielson could perform unskilled work on a sustained basis. *Id.* Dr Eather found Stubbs-Danielson

functioned at "a slow pace, both in thinking & actions" and had several moderate limitations in other mental areas. However, he concluded she had the ability to "carry out simple tasks" as evidenced by her activities of daily living. Dr. Eather opined Stubbs-Danielson could perform simple work without public contact. *Id.*

At the administrative hearing the vocational expert testified that a person with more than a mild limitation in pace would be precluded from employment except in a sheltered workshop. Id at 1174. The ALJ refused to lend any weight to this assessment because it did not address Stubbs-Danielson's RFC and was not based on the record as a whole. The ALJ denied Stubbs-Danielson's application for disability benefits. He found at step three of the sequential evaluation process that Stubbs-Danielson's conditions did not meet or equal a listed impairment and that her allegations regarding her limitations were not entirely credible. He determined that she had the RFC to perform simple, routine, repetitive, sedentary work requiring no interaction with the public.

On appeal, Stubbs-Danielson claimed that the ALJ improperly rejected the opinions of the treating and examining doctors as well as Stubbs-Danielson's own subjective complaints. *Id.* at 1173. More specifically, she argued that the ALJ's RFC assessment did not capture her deficiency in maintaining pace and other mental limitations identified by Dr. McCollum and Dr. Eather. *Id.* The Ninth Circuit disagreed finding that the ALJ appropriately "translated Stubbs-Danielson's condition, including the pace and mental limitations, into the only concrete restrictions available to him—Dr. Eather's recommended restriction to 'simple tasks.'" *Id.* at 1174. The Ninth Circuit explicitly rejected Stubbs-Danielson's argument that the ALJ's RFC assessment restricting Stubbs-Danielson to "simple tasks" constituted a rejection of Dr. McCollum's opinion. *Id.* The Ninth Circuit also found that Dr. Eather's assessment was consistent with Dr. McCollum's mental RFC assessment which found Stubbs-Danielson was not significantly limited in her ability to carry out very short simple instructions, maintain attention and concentration for extended periods, and sustain an ordinary routine without special supervision. Joining two sister circuits, the Ninth Circuit found that "an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony." *Id.*

19

1

2    The Ninth Circuit also rejected the argument counsel for Schultz advances in this case

3 concerning the ALJ's failure to give significant weight to the opinion of the vocational expert that

4 a person with more than mild limitations would be precluded from employment. The court found

5 that the ALJ's hypothetical which included the claimant's ability to perform simple, routine,

6 repetitive tasks "adequately captured claimant's deficiencies in concentration, persistence or

7 pace." *Id*. The Ninth Circuit found the ALJ's failure to give the vocational expert's testimony any

8 weight about the hypothetical relied on by Stubbs-Danielson "represents the type of credibility

9 determination charged to the ALJ which we may not disturb where, as here, the evidence

10 reasonably supports the ALJ's decision." *Id*.

11    At step five, the ALJ must consider four factors to determine whether a claimant can

12 work—age, education, work experience, and RFC.  20 C.F.R. § 404.1520(a)(4)(V), (g).  Schultz

13 does not claim the ALJ made any erroneous findings concerning these factors.  She does not claim

14 that the ALJ erred at step three in assessing her RFC.  Rather, she claims the ALJ committed

15 reversible error by failing to incorporate Dr. Voss' non-exertional, moderate limitations into the

16 hypothetical the ALJ posed to the vocational expert because a limitation to simple work and simple

17 instructions does not adequately address difficulties in persistence, concentration and pace.  The

18 court finds the Ninth Circuit's decision in *Stubbs-Danielson* forecloses this argument. The ALJ's

19 hypothetical to the vocational expert limited the hypothetical claimant to simple, routine tasks with

20 simple instructions and therefore adequately captured Schultz's deficiencies in concentration,

21 persistence and pace.  The ALJ was not required to give any weight to the testimony of the

22 vocational expert in response to the hypothetical posed by counsel for Schultz because the

23 hypothetical was not supported by the ALJ's RFC and the medical record.

24    The ALJ considered Dr. Voss' opinion concerning Schultz's moderate, non-exertional

25 limitations in reaching his RFC assessment.  AR 72.  Dr. Voss made the moderate limitations

26 findings in his psychiatric review technique form which the ALJ used in reaching his RFC

27 assessment.  Dr. Voss' mental RFC assessment was that Schultz "can maintain the attention,

28 concentration, and persistence necessary to carry out simple work tasks at a consistent pace over

a regular 40 hr workweek" despite her moderate limitations. AR 438. ("… the claimant's history and evidence in the MER does not indicate the presence of functional limitations severe enough to prevent work in all work environments.") *Id*. Dr Voss concluded Schultz was capable of unskilled work despite her non-exertional moderate limitations. *Id*.

The ALJ translated Ms. Shultz's medical conditions, including limitations in persistence, concentration and pace, and mental limitations, into a concrete and succinct RFC based on Dr. Voss' opinion as required. *Stubbs-Danielson*, 539 F.3d at 1174. His RFC accounted for the moderate limitations Dr. Voss found because the ALJ restricted her to unskilled, simple work with simple instructions. *Stubbs-Danielson* is controlling. The vocational expert's opinion has no evidentiary value if the assumptions in the hypothetical are not supported by the record. *Stubbs-Danielson*, 539 F.3d at 1174; *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). The ALJ may properly reject opinions that do not "include specific functional limitations." *Wilson v. Berryhill*, 732 F. App'x 504, 506 (9th Cir. 2018) (citing *Stubbs-Danielson*, 539 F.3d at 1174) (unpublished).

If the record will support more than one rational interpretation, the court must uphold the Commissioner's interpretation. *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017). The ALJ's findings in this case are amply supported by the record and inferences reasonably drawn from the record. The ALJ did not err by finding someone with Schultz's RFC could perform three representative jobs that exist in significant numbers in the national economy. The ALJ properly relied upon Medical Vocational Rule 204.00, which directed a finding that she was not disabled.

## CONCLUSION

Judicial review of a decision to deny disability benefits is limited to determining whether the decision is based on substantial evidence reviewing the administrative record as a whole. It is the ALJ's responsibility to make findings of fact, draw reasonable inferences from the record as a whole, and resolve conflicts in the evidence and differences of opinion. The ALJ's hypothetical to the vocational expert which limited Schultz to performing simple, routine tasks with simple instructions adequately captured her deficiencies in persistence, concentration and pace. *Stubbs-Danielson*, 529 F 3d at 1174. The ALJ's refusal to give the vocational expert's testimony in response to counsel for Schultz's hypothetical significant weight was not error because the

testimony was not based on the RFC determination or the record as a whole. As such, the ALJ's rejection of this testimony "represents the type of credibility determination charged to the ALJ" which may not be disturbed on judicial review where, as here, the record reasonably supports the ALJ's decision. *Id*. The ALJ's decision is supported by substantial evidence under 42 U.S.C. § 405(g).

Accordingly,

**IT IS ORDERED:**

1. The Clerk of Court shall SUBSTITUTE Nancy A. Berryhill for Carolyn W. Colvin as the defendant in this suit.

2. Plaintiff Debra A. Shultz's Motion for Reversal and/or Remand (ECF No. 21) is **DENIED**.

3. The Commissioner's Cross-Motion to Affirm (ECF No. 24) is **GRANTED**.

4. The Clerk of Court is instructed to enter judgment accordingly and close this case.

Dated this 26th day of September 2018.

PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE